UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SHANNON DAVENPORT,           )
                             )
            Plaintiff        )
                             )
v.                           )     No. 1:16-cv-00420-NT
                             )
NANCY A. BERRYHILL,          )
Acting Commissioner of Social Security,[1] )
                             )
            Defendant        )

REPORT AND RECOMMENDED DECISION[2]

This Child's Disability Benefits ("CDB"), Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the administrative law judge ("ALJ") erred in relying on the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grid") in finding her not disabled at Step 5. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 4.[3] I conclude that the ALJ correctly

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 17, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[3] At oral argument, the plaintiff's counsel withdrew a second point set forth in the statement of errors: that the ALJ erred in failing to specifically consider Listing 12.05(C), Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"). *See* Statement of Errors at 11-13.

1

relied on the Grid in reaching her Step 5 determination. Accordingly, I recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2012, Finding 1, Record at 14; that she had severe impairments of mild grade II L5-S1 spondylolisthesis with foraminal stenosis and bilateral L5 spondylosis, chronic pain, depression not otherwise specified ("NOS"), borderline intellectual functioning, rule-out cognitive disorder, and morbid obesity, Finding 3, *id.*; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except that she could lift and carry 10 pounds frequently and 20 pounds occasionally, sit for six hours in an eight-hour workday, stand or walk for two hours in an eight-hour workday, kneel, crouch, and climb stairs occasionally, was unable to climb ladders, ropes, or scaffolds and needed to avoid vibration, and was limited to simple jobs with simple instructions, limited changes, and rare public interaction, Finding 5, *id.* at 17; that, considering her age (20 years old, defined as a younger individual, on her alleged disability onset date, October 31, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 24; and that she, therefore, had not been disabled from October 31, 2010, through the date of the decision, May 15, 2015, Finding 11, *id.* at 25. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff challenges the ALJ's reliance on the Grid on three alternative bases: that she (i) failed to demonstrate that its use was appropriate with respect to the RFC found, (ii) its application was inappropriate as a matter of law given the plaintiff's IQ scores, and (iii) her RFC determination failed to capture the magnitude of the plaintiff's mental impairments. *See* Statement of Errors at 4-11. For the reasons that follow, I find no reversible error.

### A. Application of Grid to RFC Found by ALJ

In *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520 (1st Cir. 1989), the First Circuit stated:

> In cases where a nonexertional impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy

3

> by other means, typically through the use of a vocational expert. On the other hand, should a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate.

*Id.* at 524 (citations and internal quotation marks omitted). This quote appropriately frames the first issue before the court.

Pursuant to Social Security Ruling 83-10 ("SSR 83-10"), a nonexertional impairment is any impairment that "does not directly affect the ability to sit, stand, walk, lift, carry, push or pull." SSR 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 30. "This includes impairments that "affect the mind," *id.*, such as the plaintiff's cognitive impairment.

"[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

The administrative law judge stated, "If the claimant has solely non-exertional limitations, Section 204.00 in the [Grid] provides a framework for decision-making (SSR 85-15)." Record at 24, 48. She found that the plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work." *Id*. at 48.

The plaintiff argues that the administrative law judge failed to meet the commissioner's burden of proof at Step 5 by either providing examples of specific jobs existing in significant numbers that she could perform or substantiating her conclusion, through citation to vocational expert testimony and/or legal authority, that the plaintiff's nonexertional impairments had only a negligible effect on the full range of light work. *See* Statement of Errors at 5.

Nonetheless, as the commissioner notes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 4, the administrative law judge did cite Social Security Ruling 85-15 ("SSR 85-15"), *see* Record at 24, 48. As the commissioner points out, *see* Opposition at 4, SSR 85-15 provides that the ability to perform unskilled work includes the abilities to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting. *See* SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 347. That, in turn, supports the conclusion that a limitation to a job with simple instructions and rare public interaction does not significantly impair a claimant's ability to perform unskilled work.

Moreover, as the commissioner points out, *see* Opposition at 4, in *Garcia-Martinez v. Barnhart*, 111 Fed. Appx. 22 (1st Cir. 2004), the First Circuit rejected a challenge to reliance on the Grid in circumstances in which a claimant had been found limited to work of a routine, repetitive nature that did not involve undue pressure or interactions with the public, *see Garcia-Martinez*, 111 Fed. Appx. at 23. The First Circuit cited SSR 85-15 and *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520 (1st Cir. 1989), for the proposition that the claimant's nonexertional impairment did "not significantly interfere with the performance of the full range of unskilled work[.]" *Id*.

This court has followed suit, holding, for example, in *Swormstedt v. Colvin*, No. 2:13-cv-00079-JAW, 2014 WL 1513347, at *6 (D. Me. Apr. 16, 2014), that limitations to "understanding and remembering simple instructions, executing simple tasks, interacting with coworkers and supervisors but not the public, and adapting to occasional changes in the workplace . . . are compatible with the use of the Grid as a framework for decision-making."

In a letter filed prior to oral argument, the plaintiff cited two additional authorities in support of her bid for remand on this basis, *Boyer v. Colvin*, No. 15-2542 (1st Cir. Oct. 5, 2016), and *Roman-Roman v. Commissioner of Soc. Sec.*, 114 Fed. Appx. 410 (1st Cir. 2004). *See* Letter dated March 13, 2017, from Francis M. Jackson to Ms. Christa K. Berry, Clerk (ECF No. 19).[4]

In *Boyer*, the ALJ had found the claimant limited to "simple work with no more than occasional public contact." *Boyer*, slip op. at 2. The First Circuit noted:

> It is not clear that the grid includes jobs requiring limited public contact, and the ALJ made no finding in that regard. In fact, the ALJ's decision made no findings at all about the effect of Boyer's non-exertional limitations on her ability to perform work at any exertional level. Rather, as the Commissioner concedes, the ALJ erroneously stated that the Step 5 finding was based on the testimony of a vocational expert.

*Id.* at 3. The court remanded the case for "the ALJ to render findings as to whether Boyer's non-exertional limitation of no more than occasional public contact is of a kind that does not significantly impair her ability to do the full range of unskilled work identified in the grid, such that it makes sense to rely on the grid to make the judgment about her available work activities." *Id.*

In the plaintiff's letter, as well as through counsel at oral argument, she asserted that the instant case requires remand for the same reasons. Her counsel contended that, since there was some apparent tension between the First Circuit's decision in *Boyer* and its 2004 opinion in *Garcia-Martinez*, the court should infer that the First Circuit had overruled the latter. *Boyer* does not mention *Garcia-Martinez*, and accordingly the court will not draw that inference.

At oral argument, the commissioner argued persuasively that *Boyer* was sufficiently distinguishable to deny remand in this matter. First, and crucially, the ALJ in *Boyer* erroneously

---

[4] Insofar as appears, *Boyer* is not available in either the Westlaw or LEXIS databases; however, the plaintiff appended a copy of the slip opinion to her letter.

stated that the Step 5 finding was based on the testimony of a vocational expert. In fact, a vocational expert was not questioned about the availability of jobs in the economy for a person with Boyer's RFC. This error alone would require remand because there was no substantial evidence, or evidence at all, to support the ALJ's Step 5 conclusions. To the extent that the court remanded the case for a discussion of whether the public interaction limitation affected the ALJ's reliance on the Grid, the result should be considered limited to the unique circumstances of the case, where the ALJ's purported Step 5 grounds were inaccurate, and thus unclear. Both Social Security regulations and the First Circuit holding in *Garcia-Martinez* indicate that even an RFC that commands the plaintiff have no public interaction does not preclude an ALJ's use of the Grid. *See* SSR 85-15 at 347; *Garcia-Martinez*, 111 Fed. Appx. at 23.

In *Roman-Roman*, the issue before the court was whether the ALJ appropriately relied on the Grid when the most favorable evidence presented by an agency nonexamining psychological consultant and the attending psychiatrists found the claimant in a much more limited state than did the ALJ in this case. *See Roman-Roman*, 114 Fed. Appx. at 412. The court noted that "[t]he most favorable report of any of the attending psychiatrists still found moderate depression sufficient to merit a 'guarded' prognosis; it also found that appellant's judgment was only fair, that his short-term memory remained poor, that he could not concentrate enough to recite days backward or subtract by threes, and that his daily activities were minimal." *Id.* It held:

> In the absence of a better explanation as to how these medical findings illustrate that a nearly full set of unskilled light work is available to Roman, we believe that a translation from medical evaluations to job prospects was more appropriately reserved for a vocational expert. On this record, there are significant mental constraints outlined by even the most positive psychological prognoses and we cannot find any clear basis for concluding that the impairments have no significant effect on the work still available to appellant. This certainly does not show that appellant is disabled, but unless this gap is closed, it does preclude reliance upon the grid.

*Id.* The court noted that, on remand, "the ALJ may employ a vocational expert to fill the gap, obtain further medical evidence that may link Roman's mental capacity more directly to the work he is capable of doing, or both." *Id.* It observed that the case was "admittedly . . . close" and that it did "not suggest that a vocational expert is required in all such cases." *Id.*

As counsel for the commissioner contended at oral argument, this case is distinguishable from *Roman-Roman* in that, for the reasons discussed below, the ALJ supportably found the plaintiff significantly less limited than in that case, and the ALJ cited authority in support of the application of the Grid in view of those lesser limitations.

Accordingly, neither of the cases cited by the plaintiff in her supplemental filing dictates the outcome of the instant matter.

To the extent that the plaintiff argues that, in the absence of testimony from a vocational expert, the ALJ was required to provide specific examples of jobs that she could perform, *see* Statement of Errors at 5, her argument is without merit. As the commissioner points out, *see* Opposition at 5, SSR 85-15 and caselaw confirm that when the ALJ supportably finds that a claimant's work base is not significantly eroded by her nonexertional limitations, the ALJ is not required to provide job titles or numbers, *see, e.g., Torres v. Secretary of Health & Human Servs.*, 677 F.2d 167, 169 (1st Cir. 1982) ("We now make the point explicit. Where the Medical-Vocational Guidelines purport to require a finding of 'not disabled,' the ALJ need not name specific jobs that the claimant could perform.").

### B. Preclusion of Use of Grid Based on IQ Scores

The plaintiff also argues that her low IQ scores, which placed her in the lowest 3 percent of the general population, inherently precluded the ALJ from utilizing the Grid, necessitating vocational expert testimony. *See* Statement of Errors at 9-11 & n.3. She adds that numerous

8

courts, including this court in *Jenkins v. Colvin*, Civil No. 1:14-cv-285-DBH, 2015 WL 5093290 (D. Me. Aug. 28, 2015), and *Gurney v. Social Sec. Admin. Comm'r*, 880 F. Supp.2d 174 (D. Me. 2012), have "support[ed] the conclusion" that individuals in the lowest 10 percent of the population possess a negligible degree of aptitude, precluding their performance of any job set forth in the *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. Rev. 1991) ("DOT"). *See id*. at 9-10.

As counsel for the commissioner noted at oral argument, *Jenkins* and *Gurney* are inapposite: they concern the disregard by ALJs of vocational testimony addressing the impact of claimants' low IQ scores on the available job base.

In *Jenkins*, the court took issue with the ALJ's failure to consider the testimony of a vocational expert on how the claimant's IQ, which placed her in the bottom 10 percent of the population, affected the number of jobs available. *See Jenkins*, 2015 WL 5093290, at *2. In *Gurney*, the court took issue with the ALJ's failure to address a discrepancy between the claimant's IQ scores, which placed her in the bottom 10 percent of the population, and the DOT definition of the jobs at issue, which indicated that persons in the "bottom 10%" lacked the general learning ability and verbal aptitude to perform those jobs. *See Gurney*, 880 F. Supp.2d at 177-78.

In this case, there was no vocational expert testimony. *Jenkins* and *Gurney* do not address the questions of whether an ALJ permissibly may rely on the Grid when a claimant has IQ scores at the 10th percentile or below, or whether an individual with IQ scores in that percentile range necessarily is precluded from performing jobs set forth in the DOT. Indeed, in *Gurney*, the vocational expert testified that there were jobs that could be performed by those scoring in the

bottom 10 percent of IQ scores, but he was unable to provide any because of a limitation in the computer program he used in his work. *See id*. at 177-78.[5]

Moreover, as the commissioner points out, *see* Opposition at 5, a holding that an IQ score is *per se* disabling would be inconsistent with the Listings, *see* Listing 12.05(C)-(D) (an IQ score in the 60-70 range meets the listing for intellectual disability only when a claimant also manifests deficits in adaptive function before the age of 22 *and* has another limitation).

Remand is not warranted on the basis of this point of error.

### C. Challenge to RFC Determination

The plaintiff does not purport to bring a separate Step 4 challenge to the ALJ's RFC determination; however, in the context of pressing her Step 5 challenge, she contends that the ALJ understated the extent of the limitations caused by her borderline intellectual functioning, independently undermining reliance on the Grid. *See* Statement of Errors at 5-8.

She relies, in the main, on findings of agency examining consultant Edward Quinn, Ph.D., based on a mental status examination and administration of the Wechsler Adult Intelligence Scale Fourth Edition ("WAIS-IV"), that she had a verbal IQ in the "*extremely low* range" and was capable of completing job tasks that were "*extremely simple*" – rather than merely simple, as found by the ALJ. *Id*. at 5-6 (citations and internal quotation marks omitted) (emphasis added by plaintiff).

She contends that the Quinn findings are supported by prior IQ testing and by evidence that she had been unable to live apart from her mother, required special education throughout

---

[5] The plaintiff cites two cases from other jurisdictions, *Frazee v. Barnhart*, 259 F. Supp.2d 1182 (D. Kan. 2003), and *Treinen v. Massanari*, No. Coo-4053-DEO, 2001 WL 34008721 (N.D. Iowa Nov. 13, 2001), for the proposition that courts have supported the conclusion that individuals in the bottom 10th percentile cannot perform jobs listed in the DOT. *See* Statement of Errors at 9-10. However, like *Gurney*, *Frazee* and *Treinen* concern an ALJ's failure to recognize and resolve discrepancies between vocational expert testimony and the DOT definition of the jobs at issue. *See Frazee*, 259 F. Supp.2d at 1198-99; *Treinen*, 2001 WL 34008721, at *14 & n.7.

school, had never been able to hold a job constituting significant gainful activity, and required someone to read her questions for a Certified Nursing Assistant ("CNA") certification test that she failed numerous times over a five-year period. *See id*. 7-8.

The commissioner rejoins that, to the extent that the plaintiff implies error in the ALJ's RFC finding, the issue is waived, as it was not specifically raised or addressed in her statement of errors. *See* Opposition at 3-4. She argues that, in any event, the RFC determination is supported by substantial evidence. *See id*. at 4, 10-12.

While the plaintiff could and should have presented her RFC issue more directly and clearly, she did raise the issue. Therefore, it was not waived. *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future*, issues or claims* not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted) (emphasis added).

Nonetheless, as the commissioner argues, the ALJ's RFC determination is supported by substantial evidence. In resolving conflicts in the opinion evidence, the ALJ gave "some weight" to the opinion of Dr. Quinn, "great weight" to the opinions of agency nonexamining consultants Peter G. Allen, Ph.D., and David R. Houston, Ph.D., who had the benefit of review of the Quinn opinion, and "great weight" to a later opinion of agency examining consultant Jonathan M. Freedman, Ph.D. Record at 23-24, 432, 441-43, 520-25, 589-92. She noted that Dr. Freedman "opined that the [plaintiff's] ability for unskilled labor, following work rules, and completing tasks assigned were within normal limits; that her persistence appeared to be adequate for daily living; that her social interaction was adequate for work; that she is able to adapt to circumstances; and

there her understanding, concentration, following instructions, memory, and language abilities are suitable for employment." *Id*. at 23 (citation omitted).

As the commissioner notes, *see* Opposition at 10-11, the ALJ also relied on evidence that (i) some examiners found the plaintiff's memory to be intact and her attention and sustained concentration to be within normal limits, (ii) she was able to graduate from high school, attend Job Corps for one year, pass the test for her CNA license, and obtain a driver's license, and (iii) she reported performing a wide range of daily activities, including playing the piano, caring for her personal needs, driving, volunteering with community groups weekly, and watching television, using a computer, listening to the radio, playing cards and board games, reading the newspaper, and following local and national news, *see* Record at 15-16, 18-19.

This constituted substantial evidence in support of the ALJ's RFC finding.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of June, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge